NOT DESIGNATED FOR PUBLICATION

No. 128,586

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PATRICK C. LYNN,
*Appellant*,

v.

SAM CLINE, WARDEN, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; CLINTON LEE, judge. Submitted without oral argument. Opinion filed July 24, 2026. Affirmed.

*Rhonda K. Levinson*, of Bateman Law Group, LLC, of Leavenworth, for appellant.

*Margie J. Phelps*, Kansas Department of Corrections, for appellees.

Before WARNER, C.J., ISHERWOOD and HURST, JJ.

PER CURIAM: Patrick Lynn, an inmate of the Kansas Department of Corrections, appeals the district court's dismissal of three K.S.A. 60-1501 petitions. Lynn filed the petitions between 2017 and 2021, challenging the conditions of his confinement. On appeal, he argues that the district court's ruling was based on procedural and substantive errors, claiming that the manner in which the court proceeded with the cases and the court's ultimate dismissal of his petitions require reversal. After carefully reviewing the record and the parties' arguments, we are unpersuaded by Lynn's claims and affirm the district court's judgment in each case.

1

The district court described this case as having "a tortured procedural past"—a lifespan now nearing a decade with total filings well into the hundreds. We recount the relevant history, which includes three distinct K.S.A. 60-1501 actions that the district court consolidated for appeal after issuing three separate final orders in 2023.

*Lynn's high number of filings leads to permanent injunctions with filing restrictions.*

Lynn was convicted in 1996 of aggravated burglary, aggravated kidnapping, rape, and aggravated sodomy. While his direct appeal was pending, Lynn filed eight lawsuits in Kansas courts over a four-month period—"a habeas corpus action and various civil lawsuits against a witness from his criminal trial, the wife of one of the jurors, his attorney, the district attorney, the trial judge, various law enforcement officials, and the victim in his criminal case." *State v. Lynn*, No. 106,922, 2012 WL 4937468, at *1 (Kan. App. 2012) (unpublished opinion). During the same period, Lynn filed parallel lawsuits in federal court.

In the wake of this spree of filings, the State filed a petition requesting that the court impose filing restrictions upon Lynn. The Johnson County District Court granted the petition and issued a permanent injunction with the following terms (here summarized):

> "'1. Lynn must file an application for leave to file a petition or pleading, excluding a notice of appeal.
> "'2. Lynn must attach a copy of the injunction as the first item of the document.
> "'3. Lynn must include a copy of the proposed petition or pleading, a current list of all lawsuits currently pending or previously filed with the court or any other Kansas court involving the same claims or parties, and disposition of same if possible, all outstanding filing injunctions, and a notarized statement of his prison account.

"'4. Lynn must include a notarized affidavit certifying that the claims have not been previously asserted, the claims are not frivolous or made in bad faith, and the claims comply with all civil and appellate procedures and rules.

"'5. The administrative judge, or the judge's designee, will then determine if the petition or pleading is lacking in merit, is duplicative, or is frivolous. If the petition or pleading is found to comply with the above requirements, Lynn will be granted leave to file it.'" 2012 WL 4937468, at *1.

Lynn appealed the district court's order, but this court affirmed the injunction and the Kansas Supreme Court denied review. 2012 WL 4937468, at *1.

*Lynn files his 2017 habeas petition.*

While Lynn has attempted to file many cases over the last 30 years, the first filing that concerns our discussion here arose when Lynn filed a K.S.A. 60-1501 petition in Leavenworth County District Court in May 2017. In this petition, he alleged that officials at Lansing Correctional Facility were violating his First, Fourth, and Eighth Amendment rights by preventing him from accessing the courts; seizing, disarraying, and destroying his legal files and personal property, including family photographs, in retaliation for his First Amendment litigation activities; opening and reading his confidential legal mail; using excessive force against him and denying him medical care for his heart condition; confining him in a "slamcell" with inadequate accommodations; restricting his telephone access for 25 months and thereby inhibiting his ability to contact his attorney and family; and denying him access to hygiene items, showers, legal papers, and meals while in the infirmary.

In July 2017, the district court appointed counsel for Lynn, directing the attorney to file an amended petition that clarified each specific complaint and attach proof of administrative exhaustion, if required.

In May 2018, Lynn's attorney filed an amended petition that reasserted and clarified his pro se claims and contended that "Lynn's attempts at filing appeals have gone nowhere, the paperwork was never filed by staff, [and] the paperwork was rejected due to [Lynn's] inflammatory language." Although the attorney acknowledged the longstanding rule that administrative remedies must be exhausted when available, he argued that Lynn's failure to exhaust "should not bar" district court review because "where such remedies are not available, or are inadequate to address the problem in issue, exhaustion is not required."

*Lynn files his 2019 habeas petition.*

In July 2019, Lynn filed a second K.S.A. 60-1501 petition, alleging new violations of his rights under the First, Fourth, Sixth, Eighth, and Fourteenth Amendments. The petition raised claims of frequent transfers between the Lansing, El Dorado, and Hutchinson Correctional Facilities, as well as seizure and ransacking of his property (particularly his legal materials), denial of face-to-face visits with his attorney, inadequate medical care, and retaliation. As with the 2017 petition, Lynn did not attach proof of administrative exhaustion.

In September 2019, Lynn attempted to file a K.S.A. 60-1501 petition with the Kansas Supreme Court, listing the case number for the 2019 district-court petition, 19-CV-182, in the caption. The district court accepted the filing the following month. Lynn then filed a "Supporting Memorandum of Law and Fact." It is unclear from the record whether Lynn intended the memorandum to accompany his July 2019 petition in the district court or his September filing with the Kansas Supreme Court.

4

*Lynn files his 2021 habeas petition.*

In March 2021, Lynn filed a third K.S.A. 60-1501 petition, this time challenging the legitimacy of three disciplinary hearings. He contended that he had been "conspiratorially subjected to retaliatory & perjur[i]ous rules violation charges" through "unconstitutional hearings." Unlike the 2017 and 2019 petitions, this petition included proof of administrative exhaustion—Lynn attached copies of the dispositions of his disciplinary appeals for each of the three challenged hearings.

Between July and August 2021, Lynn filed supplemental motions, alleging he had been denied the opportunity to present a defense at his disciplinary hearings and contending that he was subject to disciplinary segregation and had good-time credits withheld due to the disciplinary actions.

*The court considers the 2017, 2019, and 2021 cases and dismisses each petition.*

In February 2023, the Department moved to dismiss all three cases. In the 2017 and 2019 cases, the Department asserted that Lynn had not complied with the statewide injunction's filing restrictions and had not attached proof of administrative exhaustion; the Department also argued that the Leavenworth County District Court "lack[ed] jurisdiction" because Lynn was no longer being held within the county. In the 2021 case, the Department raised the same arguments, omitting only the failure-to-exhaust contention.

In its motion to dismiss the 2017 case, the Department observed that "nearly six years and nearly 300 filings later, this matter lingers on the docket and has not progressed. What was intended to be a prompt and summary procedure based upon review of the initial Petition has been anything but that." The Department attributed that delay to Lynn's refusal to follow the statutory framework for K.S.A. 60-1501 actions,

which envisions a single, unamended petition filed against a single respondent with attached proof of administrative exhaustion. K.S.A. 75-52,138. That framework, the Department asserted, contemplates swift action—with the petition presented and examined "promptly" by a judge and any writ "served without delay." K.S.A. 60-1503(a), (c). But Lynn's filings continued to complicate the process. For example, the Department noted that Lynn had filed the petitions "against a host of people, including the then facility attorney Sherri Price, Judge David King, Governor Sam Brownback, Representative Russ Jennings, a host of [Department] employees and officials, and Warden Sam Cline (referred to by Petitioner as 'Sammy Cline')" and had failed to "state why the restraint is wrongful as required by statute."

As the Department's motions were pending, Lynn filed a pro se motion requesting that the district court consolidate the 2017, 2019, and 2021 cases, asserting that it was "fundamentally prudent to consolidate" the cases given the continuing nature of his claims. Lynn also requested an extension of time to respond to the Department's motion to dismiss and a continuance of the hearing set for the end of the month, citing "unforeseen" and "pressing . . . deadlines" in one of his pending federal appeals. The district court granted Lynn's requested extension and scheduled a hearing on the Department's motion to dismiss for early August 2023. Though the court did not formally consolidate the cases, it noted that the August hearing would address all three petitions.

The court conducted the hearing in August, where both sides presented argument relating to their positions. A month later, the court issued memoranda and orders dismissing each of the three petitions. We address each in the order filed, beginning with the 2017 petition.

*The 2017 Order*

In the 2017 case, the district court found that Lynn had substantially complied with the permanent injunction's filing requirements. The court presumed that the judges—by then retired—who had permitted the filings must have found that Lynn had complied with the injunction and that his claims were not frivolous, noting that under the injunction, "if the reviewing judge determines the petition is not frivolous, the judge can simply 'permit' the petition or other pleadings to be filed."

But the court nevertheless concluded that dismissal was appropriate because Lynn had not shown that he exhausted his administrative remedies before filing the 2017 petition. The court observed that Lynn had not attached any documents showing pursuit of administrative remedies and rather "seem[ed] to admit" he had not pursued administrative review. And the court found Lynn's assertion that he had been prevented from or otherwise could not comply with this requirement to be unsupported and conclusory. The court noted that Lynn "seems to assume, and wants this Court to assume, that had he tried to avail himself of his remedies, he would have been thwarted. The Court simply refuses to make this assumption."

The court described Lynn's claim that he had been denied access to legal process as "more than a little bewildering" given that Lynn had filed at least seven actions in Leavenworth County District Court alone—not counting his filings in other Kansas counties and in federal court. The court also observed that, contrary to Lynn's conclusory allegations, "there actually is some evidence suggesting that prison officials" timely responded to Lynn "at each turn." For support, the court pointed to exhibits Lynn had attached to a supplemental pleading, which "clearly show[ed] that when [Lynn] chooses to 'play by the rules,' he knows how to initiate and utilize the grievance process." The court also found that these attachments demonstrated that the warden had informed Lynn "that he had the right to appeal the warden's decision to the Secretary using the

7

'appropriate form.'" The evidence thus did not support Lynn's contention that officials had thwarted his grievances. The court further noted that "anecdotal evidence" from the 2021 case demonstrated that Lynn had successfully exhausted his administrative remedies through the proper administrative appeal process. Based on these findings, the court concluded that Lynn had neither shown exhaustion of his administrative remedies nor adequately established that his failure to exhaust was excused by the conduct of officials.

The court's ruling also addressed the Department's argument that the court lacked "jurisdiction and/or venue" because Lynn was no longer housed in Leavenworth County after his transfer to El Dorado. The court observed that when the initial petition was filed, "jurisdiction and/or venue was proper in Leavenworth County" because Lynn was then being held at Lansing. See K.S.A. 60-1501(a). The court thus found transfer unnecessary for claims arising from Lynn's confinement at Lansing. But the court concluded it could not consider claims arising from Lynn's confinement at Hutchison or El Dorado, so it dismissed those claims without prejudice. In doing so, the court recognized that it is typically preferable to transfer venue rather than dismiss a petition outright. But it found that "in light of the permanent injunction, it would be inappropriate for this Court to force these claims on other district courts. Rather, these other courts should determine for themselves whether and to what extent to permit [Lynn]'s claims to be filed."

Based on these findings, the district court dismissed all claims in the 2017 petition involving Lynn's confinement at Lansing with prejudice and dismissed all claims arising from his confinement at the facilities in Hutchinson and El Dorado without prejudice.

*The 2019 Order*

Turning to the 2019 case, the district court again presumed that the judges who had permitted the petition to be filed must have found that Lynn complied with the statewide injunction's filing requirements and that the claims were not frivolous. But as

8

with the 2017 case, the court found that dismissal was appropriate since Lynn had not shown he had exhausted his administrative remedies before filing the 2019 petition. The court reiterated that Lynn's allegations that officials at the Lansing facility had prevented him from doing so were conclusory and lacked factual support.

On venue, the court reached the same conclusion: Transfer was unnecessary for claims arising from Lynn's confinement at Lansing, but the court lacked authority to consider claims arising from his confinement at facilities located outside of Leavenworth County. In light of the permanent injunction, the court dismissed those claims without prejudice rather than transfer venue.

As in the 2017 case, the district court dismissed all claims arising from Lynn's confinement at Lansing with prejudice and dismissed all claims arising from his confinement in Hutchinson and El Dorado without prejudice.

*The 2021 Order*

In the 2021 case, as with the previous petitions, the court presumed that Lynn had complied with the permanent injunction's filing requirements. In its discretion, the court also retained the claims arising from Lynn's confinement at Lansing, finding venue proper because Lynn was housed at the Lansing Correctional Facility when he filed the petition. As previously, the court dismissed without prejudice all claims arising from Lynn's confinement at other facilities throughout the state.

The court then turned to the merits of Lynn's petition and ultimately dismissed the remaining claims for failure to state a claim upon which relief could be granted. The court found that none of Lynn's allegations implicated the deprivation of a property or liberty interest or an atypical and significant hardship. The court emphasized that Lynn had never received a fine and had never forfeited good-time credits he had already

9

earned. The court also found that neither disciplinary segregation nor loss of inmate privileges constitutes a deprivation of liberty or an atypical and significant hardship under Kansas caselaw.

The court observed that in one disciplinary case, Lynn "received 10 days' disciplinary segregation," in another he "received a verbal reprimand," and in the last "he received 15 days' segregation and 15 days' loss of privileges." The court found that "these punishments simply do not rise to the level of a Due Process Violation," citing *Davis v. Finney*, 21 Kan. App. 2d 547, 902 P.2d 498 (1995). Given this conclusion, the court found it unnecessary to address Lynn's arguments about the alleged procedural deficiencies in the disciplinary hearings.

In December 2024, Lynn filed a motion to consolidate the 2017, 2019, and 2021 cases for purposes of appeal. The district court granted the motion and consolidated the cases under the 2017 case number.

DISCUSSION

Lynn now appeals the district court's judgments on his three K.S.A. 60-1501 actions, raising both procedural and substantive claims. From a procedural standpoint, Lynn challenges the manner in which the district court conducted a single hearing for his three cases, claiming it limited his ability to present his claims; he also claims that the court converted the hearing—which was intended to be a nonevidentiary hearing where attorneys presented argument—to an evidentiary one, as the court's rulings referenced "evidence" in the attachments to Lynn's motions and other written filings. From a substantive standpoint, Lynn challenges the district court's dismissal of his claims.

1. *Lynn has not demonstrated any error in the manner the district court conducted the joint hearing in these cases.*

As we have noted, Lynn challenges two aspects of the district court's handling of the hearing in this case: He asserts that the district court essentially converted the proceeding to an evidentiary hearing without providing him any notice of that change. And he argues that the court erred in conducting one hearing to address his claims in all three cases. We do not find these arguments persuasive.

Lynn first asserts the district court erred by improperly considering evidence at the August 2023 nonevidentiary hearing, which had been set only for oral argument.

K.S.A. 60-1505(a) "expressly contemplates a nonevidentiary hearing focusing on the *motion, files, and records of the case*." (Emphasis added.) *Denney v. Norwood*, 315 Kan. 163, 174, 505 P.3d 730 (2022). If "the court determines that the motion, files, and the records of the case conclusively show that the inmate is entitled to no relief, then the court shall dissolve the writ." 315 Kan. at 174. If that is not possible, the district court may conduct an evidentiary hearing and make appropriate findings of fact and conclusions of law in support of its judgment. 315 Kan. at 174-75.

Lynn contends the district court converted the nonevidentiary hearing into an evidentiary one "because the court mentions 'evidence' in the orders to dismiss"—arguing that this use of the word alone compels our conclusion that an evidentiary hearing was held. He argues that conducting an evidentiary hearing without notice deprived him of the opportunity to issue subpoenas, call witnesses, or prepare and present evidence.

We are unconvinced. In both the 2017 and 2019 cases, the district court's findings rested solely on the motion, files, and records of each individual case—Lynn had not attached any documents showing pursuit of administrative remedies, and Lynn "seem[ed]

11

to admit he did not exhaust his administrative remedies" within the petitions themselves by arguing that he was not required to exhaust them. The court emphasized that Lynn had filed several cases, some of which (like the 2021 case) demonstrated Lynn understood the exhaustion requirements.

Only after resting on the records of the individual cases at issue did the district court note that "anecdotal evidence" from the 2021 case showed that Lynn had successfully exhausted his administrative remedies through the proper administrative appeal process in that context. This reference to Lynn's court filings did not turn a nonevidentiary hearing into an evidentiary one.

Lynn also argues that the district court erred by unofficially consolidating the cases for the hearing, given that Lynn had filed a motion to consolidate the three cases and the court had never ruled on it. But within just a few pages of his briefing, Lynn argues both sides of the same question: He contends the district court should not have used evidence from the 2021 case to conclude he was capable of exhausting his remedies in the 2017 and 2019 cases, yet he also asserts the district court should have used evidence from those earlier cases to conclude that "[f]acts from the other two cases supported" his 2021 petition. Lynn cannot have it both ways. We have already found that the district court rested its holdings on the records of each individual case and relied on facts from the 2021 case for merely the anecdotal support of its findings.

K.S.A. 60-1505(a) "expressly contemplates a nonevidentiary hearing focusing on the motion, files, and records of the case"—which is exactly what occurred at the August 2023 hearing. *Denney*, 315 Kan. at 174. We find no error in the district court's decision to hear these cases together, particularly given the overlapping and repetitive nature of Lynn's claims.

2. *The district court properly dismissed Lynn's habeas petitions.*

Lynn also challenges the district court's dismissal of his 2017, 2019, and 2021 petitions. Broadly speaking, a petition for habeas corpus under K.S.A. 60-1501 is "a procedural means through which a prisoner may challenge the mode or conditions of his or her confinement, including administrative actions of the penal institution." *Safarik v. Bruce*, 20 Kan. App. 2d 61, 66-67, 883 P.2d 1211 (1994). To state a claim for relief, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009).

Because petitions under K.S.A. 60-1501 often involve challenges to actions by government agencies, a petitioner must demonstrate that they have exhausted their administrative remedies—that is, sought meaningful recourse before the agency, resulting in a final administrative decision—before petitioning for judicial review of the agency's action. K.S.A. 75-52,138. A petitioner seeking relief under K.S.A. 60-1501 must thus allege that they have exhausted the full administrative process and attach proof of that exhaustion to the petition. If a petitioner fails to make this showing, the district court must dismiss the petition. *Boyd v. Werholtz*, 41 Kan. App. 2d 15, 19, 203 P.3d 1 (2008).

Once a petitioner satisfies this exhaustion requirement, Kansas statutes contemplate "two possible paths" for courts adjudicating habeas petitions under K.S.A. 60-1501. *Denney*, 315 Kan. 163, Syl. ¶ 5. If a court determines from the face of the filings that the petitioner is entitled to no relief, the court may deny the petition outright. Otherwise, a court must do what the district court did here—"issue a writ of habeas corpus, appoint counsel, order the respondent to file an answer, hold a hearing, and determine the cause." 315 Kan. 163, Syl. ¶ 5.

Though Lynn brings several challenges to the district court's decisions in his cases, we organize the various claims into three broad categories:

- First, Lynn argues that the court's conclusion that he had not exhausted his administrative remedies for the 2017 and 2019 petitions was unfounded, as he had asserted that any effort to engage in the administrative review process would have been futile.

- Second, he disputes the district court's ruling that the 2021 petition did not allege deprivation of a liberty or property interest or other shocking actions that could be addressed through a K.S.A. 60-1501 action.

- Third, he challenges the district court's decision to dismiss his claims arising from his confinement at the Hutchinson and El Dorado facilities without prejudice, rather than transfer the case to courts in those counties.

We address each category of claim individually. Because we stand in as good a position as the district court to assess whether "the motion and the files and records of the case conclusively show that the inmate is entitled to no relief," we review the court's dismissal of these claims de novo. K.S.A. 60-1505(a); *Denney*, 315 Kan. at 175.

2.1.  *The district court did not err in dismissing the 2017 and 2019 cases for failure to exhaust administrative remedies.*

Lynn first argues the district court erred by dismissing the 2017 and 2019 cases after finding that he had not exhausted his administrative remedies. See K.S.A. 75-52,138. He contends he did not need to exhaust the administrative appeal process for these claims because that remedy was "futile"—corrections staff "refused to engage in any good faith administrative process." Lynn further argues that he alleged more than mere conclusory allegations about his unsuccessful attempts to exhaust available remedies.

14

In support of his futility argument, Lynn relies on *Ross v. Blake*, 578 U.S. 632, 635, 136 S. Ct. 1850, 195 L. Ed. 2d 117 (2016), where the United States Supreme Court discussed exhaustion of administrative remedies under the Prison Litigation Reform Act of 1995 (PLRA). The PLRA requires an inmate to exhaust "such administrative remedies as are available" before bringing suit to challenge prison conditions under the Act. 42 U.S.C. § 1997e(a). The Court held that an administrative remedy is not "available" under 42 U.S.C. § 1997e(a) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; or "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 578 U.S. at 643-44.

While *Blake* specifically addresses requirements under the PLRA—an Act not at issue here—the district court nonetheless considered Lynn's arguments in its orders on the 2017 and 2019 cases. But the court found that Lynn was simply asking it to assume that if he tried to avail himself of any remedies, he would have been thwarted. But the court found that Lynn pointed to no facts in the record to support that assumption.

We agree with the district court's reasoning. On appeal, Lynn describes a "non-exhaustive" list of 17 facts alleged in his "Amended Petition" that he contends show interference and cruel and unusual punishment that prevented him from exhausting his available remedies or rendered exhaustion futile. But nowhere does Lynn describe an unsuccessful attempt to use the administrative exhaustion process. As the Department points out, Lynn does not describe an unanswered grievance, an unprocessed appeal from a disciplinary report, or any threat aimed at discouraging his use of available administrative procedures.

As the district court found, the exhibits Lynn attached to his 2017 petition in fact demonstrate the opposite—staff at the Lansing facility made multiple attempts to facilitate his exhaustion of administrative remedies through proper forms and procedures. One letter, written in response to a "[s]pecial problem grievance," showed corrections staff directing Lynn to "make use of the normal grievance procedure." Another reflected the same staff instructing Lynn that if he wished his grievances to be considered, he must refrain from including profanity, demeaning comments toward staff, and inappropriate commentary. Lynn's response to that letter was: "Blow me Asshole!" The record thus reflects that Lynn did not make a good-faith effort to exhaust his administrative remedies through the available procedures.

Even applying the United States Supreme Court's analysis for the PLRA to Lynn's duty to exhaust his administrative remedies under K.S.A. 75-52,138—as the district court did below—Lynn has not pointed to any facts supporting his contention that officers were unable or consistently unwilling to provide relief to aggrieved inmates; that the administrative scheme was so opaque he could not use it; or that prison administrators thwarted him from taking advantage of a grievance process through machination, misrepresentation, or intimidation. Lynn was therefore required to exhaust his administrative remedies under K.S.A. 75-52,138, and he failed to do so.

We affirm the district court's dismissal of Lynn's claims arising from conduct at Lansing Correctional Facility in the 2017 and 2019 petitions for failure to exhaust his administrative remedies.

2.2.    *The district court did not err in dismissing the 2021 case because Lynn could not show he was entitled to relief.*

Lynn next challenges the district court's dismissal of the 2021 case, in which the court found that the motion, files, and records of the case conclusively showed that Lynn

16

was entitled to no relief. Unlike in the 2017 and 2019 cases, Lynn did attach proof of administrative exhaustion to the 2021 petition. The court's ruling in this case therefore turns solely on whether Lynn showed he was entitled to relief.

Here, the district court found that Lynn might be entitled to relief based on the allegations in the 2021 petition, issued a writ of habeas corpus, appointed counsel, ordered the Department to file an answer, and conducted a nonevidentiary hearing. Lynn later declined appointed counsel and elected to represent himself. Our Supreme Court has held that under this procedural posture, "[i]f the court determines that the motion, files, and the records of the case conclusively show that the inmate is entitled to no relief, then the court shall dissolve the writ." *Denney*, 315 Kan. at 174.

"To avoid summary dismissal of a K.S.A. 60-1501 petition, the petitioner's allegations must be of shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson*, 289 Kan. at 648 (citing *Bankes v. Simmons*, 265 Kan. 341, 349, 963 P.2d 412, *cert. denied* 525 U.S. 1060 [1998]). The district court held that after considering the pleadings, files, and records of the case and the parties' oral arguments, Lynn was not entitled to relief because he neither demonstrated a loss or impairment of a property or liberty interest nor showed that his disciplinary punishment imposed an atypical and significant hardship in relation to the ordinary incidents of prison life—the required showings for relief under K.S.A. 60-1501.

In the 2021 case, Lynn challenged the legitimacy of three separate disciplinary hearings that resulted in: (a) various stints of disciplinary segregation ranging from 10 to 15 days; (b) 15 days' loss of inmate privileges; and (c) 11 days of good-time credits he had previously been eligible to earn. Lynn was not fined for his actions, and he never forfeited any good-time credits that had been earned. The district court found that disciplinary segregation and the loss of inmate privileges and eligible—but not yet

17

earned—good-time credit were, as a matter of law, not deprivations of a liberty interest that can be remedied through a K.S.A. 60-1501 petition. We agree.

Kansas appellate courts have routinely held that disciplinary segregation does not interfere with a constitutionally protected interest; an incarcerated person has no protected liberty interest in remaining in the general prison population rather than being separated for a limited period of time. *Hardaway v. Larned Correctional Facility*, 44 Kan. App. 2d 504, 505, 238 P.3d 328 (2010) (citing *Murphy v. Nelson*, 260 Kan. 589, Syl. ¶ 9, 921 P.2d 1225 [1996]). The district court therefore correctly held that Lynn's periods of disciplinary segregation did not implicate a liberty interest that can be remedied through a K.S.A. 60-1501 petition.

This court has also held that neither a loss of inmate privileges nor a loss of the opportunity to earn good-time credit raises constitutional concerns. In *Ramirez v. State*, 23 Kan. App. 2d 445, 447, 931 P.2d 1265, *rev. denied* 262 Kan. 962 (1997), we explained that "there is no due process violation unless the resulting administrative punishment results in a significant and atypical hardship for the inmate" and found "as a matter of law, that 30 days' loss of privileges does not constitute an atypical and significant hardship for purposes of a due process analysis." And "there is no protected liberty interest in good time credits not awarded." 23 Kan. App. 2d at 447 (citing *Frazee v. Maschner*, 12 Kan. App. 2d 525, 528, 750 P.2d 418, *rev. denied* 243 Kan. 778 [1988]).

Our state's caselaw is clear that under the facts of the 2021 case, Lynn was not entitled to relief because he neither demonstrated a loss or impairment of a property or liberty interest nor showed his disciplinary punishment imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. The district court did not err in dismissing the 2021 case on this basis.

2.3. *The district court did not abuse its discretion in dismissing the claims regarding the Hutchinson and El Dorado Correctional Facilities, given the statewide permanent injunction's filing restrictions.*

As his final argument on appeal, Lynn contends the district court erred by dismissing without prejudice his claims arising from occurrences at the Hutchinson and El Dorado facilities in the 2017, 2019, and 2021 cases rather than transferring those claims to the venues authorized to hear those cases.

Under K.S.A. 60-1501(a), an incarcerated person may petition for habeas corpus relief in "the supreme court, court of appeals or the district court of the county in which such restraint is taking place." This statutory provision codified the longstanding rule— already in place before K.S.A. 60-1501 was enacted—that "a court has no authority to issue a writ of habeas corpus directed to a person detained outside its territorial jurisdiction." *Anderson v. Anderson*, 214 Kan. 387, 392, 520 P.2d 1239 (1974); see also *Love v. Love*, 188 Kan. 185, Syl. ¶ 2, 360 P.2d 1061 (1961) (finding that an "application for a writ must be brought in the judicial district where the alleged illegal detention occurs" because a habeas corpus proceeding is viewed "in the nature of a proceeding *in rem*").

Generally, a change in venue rests with the sound discretion of the district court. *Bohanon v. Werholtz*, 46 Kan. App. 2d 9, 14, 257 P.3d 1239 (2011). But our courts have noted that in most instances, the "proper course for a district court when faced with a K.S.A. 60-1501 petition filed in the wrong county—i.e., the improper venue—is to transfer the case to the district court in the county where the petitioner is being confined." *Johnson v. Zmuda*, 59 Kan. App. 2d 360, Syl. ¶ 3, 481 P.3d 180 (2021).

In each of Lynn's three cases, the district court found that "when the initial petition was filed, jurisdiction and/or venue was proper in Leavenworth County as Petitioner was then housed at [Lansing Correctional Facility], so Leavenworth is where the restraint was

occurring." The court exercised its discretion to retain the Lansing claims, noting that "the petition was filed in the correct county, the disciplinary proceedings happened in this county, most of the witnesses are in this county, and the writ was issued in this county." But the court found it lacked authority to consider claims arising from conduct at the Hutchinson and El Dorado facilities after Lynn had been transferred from Lansing and thus dismissed those claims without prejudice. In doing so, the court acknowledged that a transfer of venue is preferred over an outright dismissal, but explained:

> "[I]n light of the permanent injunction, it would be inappropriate for this Court to foist these claims on other district courts. Rather, these other courts should determine for themselves whether to permit Petitioner's claims to be filed. Thus, should Petitioner wish to pursue these claims in the correct counties, he must first comply with the procedures set forth in the permanent injunction in each of those counties."

On a practical level, transferring Lynn's Hutchinson and El Dorado claims would prove more complex than Lynn suggests. His petitions intermingle claims arising from multiple facilities over multiple years, and any transfer would require the district court to identify and disaggregate each allegation arising after Lynn's transfer from Lansing—a task far more burdensome than a standard whole-case transfer. The district court did not abuse its discretion by declining to undertake that effort and instead dismissing those claims without prejudice, with instructions for Lynn to refile in the district court of the county of his current confinement if he wishes to pursue those matters.

Given the complexity of the considerations the district court weighed in determining that dismissal was preferable to transfer, we find no abuse of discretion in its decision to dismiss the Hutchinson and El Dorado claims without prejudice.

We affirm the district court's dismissal of Lynn's petitions.

Affirmed.

20